WRIGHT et al. v. O'LOUGHLIN et al.
No. 2150.

Court of Civil Appeals of Texas. Eastland.
June 13, 1941.

Rehearing Denied Sept. 19, 1941.

Harrell & Bowers, of Breckenridge, and F. D. Wright, of Cisco, for appellants.

Cox & Hayden, of Abilene, for appellees.

FUNDERBURK, Justice.

Cisco Banking Company, a partnership, with capital stock of $100,000, upon ceasing to do a banking business on September 4, 1931, attempted a voluntary liquidation. On March 14, 1932, in pursuance of such purpose, all the stockholders (partners) agreed in writing to convey all their property, real and personal, except homesteads, to F. D. Wright, as trustee, which was done. The purposes of the trust were: (1) To provide a fund, in addition to the ordinary assets of the Bank, with which to pay the depositors and creditors; and (2) to provide a means of proportioning the contributions made by the several stockholders to such fund, according to the stock ownership of each.

The subsequent institution of an involuntary proceeding in bankruptcy changed, but did not supersede, the original plan of liquidation. Instead of sales of the trust properties by the Trustee to raise money to pay the debts, an agreed composition with creditors was effected which required a modification, but not abrogation, of the

original trust agreement so as to authorize the Trustee to mortgage or pledge the trust properties. The composition agreement contemplated the initial payment of 60 per cent of the claims of depositors and creditors to be procured as a loan from the Reconstruction Finance Corporation. In order to obtain such loan a number of different things were required, or, at least, were done: (1) All assets of the Cisco Banking Company (all partnership property, but not individual property of the partners) were transferred to Cisco Mortgage Loan Company, a corporation chartered for the purpose and as a part of the means of effecting said loan. (Said corporation will hereinafter be referred to as the Mortgage Company.) (2) The consideration for such transfer of assets was the assumption by the Mortgage Company of the liabilities of the Cisco Banking Company (hereinafter referred to as the Bank). (3) Particular assets were charged off and substituted therefor were the notes of the several stockholders (partners), or their representatives, payable to the bank in a sum equal to the amount of stock of each in the Bank; the note of P. C. O'Loughlin being $12,000 and of J. H. Reynolds, $13,000. (4) As collateral security for such loan, the Trustee executed a note to the Mortgage Company in the sum of $140,000 secured by a lien upon said trust properties. (This note was not to be considered as an asset of the Mortgage Company in the same sense as the other assets.) (5) In order to free certain of the assets from a pledge of the same to the Fort Worth National Bank, the partners (or their representatives for them) in writing personally guaranteed payment of the Fort Worth National Bank's debt in excess of the 60 per cent which was to be paid to it as other creditors under the composition agreement out of the loan from the R. F. C. (6) In order to procure the agreement of the depositors to the composition, J. H. Reynolds, as one of the partners, was required to substitute for his note given to the Bank in the amount of his $13,000 stock, another note in the sum of double that amount, or $26,000. This note was paid by Reynolds on September 24, 1931, with accrued interest of $502.50, or an aggregate of $26,502.50.

When the Bank failed, P. C. O'Loughlin, one of the partners, had no deposit, but owed the Bank a note in the sum of $983.10, which was renewed December 5, 1933, payable May 5, 1934, with 8 per cent interest from date and upon which a payment was credited July 15, 1937 of $227.33. At the time the Bank failed J. H. Reynolds, another of the partners, owed the Bank nothing, but had a deposit therein of $22,644.80. On June 12, 1935, the assets having been liquidated and applied to the R. F. C. loan in sufficient amount to reduce the loan to $128,405.80, said J. H. Reynolds paid said balance and took a transfer of the debt and securities. Contemporaneously, the Loan Company executed its note in renewal of the said balance of $128,405.80, payable to said J. H. Reynolds on or before December 31, 1937. On December 31, 1937, Reynolds purchased outright all the remaining assets. The consideration for such purchase consisted of: (1) The cancellation of the balance of the indebtedness due him by the Mortgage Company; (2) the payment of an additional dividend to depositors and creditors amounting to 10 per cent; (3) the assumption of the stockholders' personal obligations to the Fort Worth National Bank. This sale of the assets to J. H. Reynolds was approved by a judgment of the bankruptcy court thus consummating the settlement and discharge of the debts due by the Bank, as assumed by the Mortgage Company, to the depositors and creditors. The liabilities thus discharged by composition and/or payment did not include, however, debts due by the Bank to the stockholders, whether as owners of stock or as depositors of the Bank.

This suit by Emma L. O'Loughlin and others, as survivor and heirs of the P. C. O'Loughlin, deceased, against F. D. Wright, Trustee, and J. H. Reynolds, was filed September 27, 1938. Plaintiffs, in effect, sought a judgment declaring the several tracts of land conveyed by P. C. O'Loughlin to F. D. Wright, Trustee, as before stated, freed from the trust, on the ground that the assets of the Bank and Mortgage Company had been sufficient to pay, and without recourse to the sale of said land had paid all of the debts of said Bank due to depositors and creditors; and hence, the trust agreement, the deeds executed to F. D. Wright, Trustee, in pursuance of such agreement, and the amendatory agreement, were no longer of any force or effect. (Hereinafter any reference to "the trust agreement", unless otherwise indicated, shall be understood to include said original agreement of March 14, 1932, the deeds executed in pursuance thereof, and said supplementary agreement of March 7, 1934.)

By a trial amendment it was, as an alternative, alleged, in effect, that if such

debts had not been paid, plaintiffs offered to pay the amount due, to be declared by judgment of the court, as a condition upon their asserted right to have the land freed from the provisions of said trust agreement.

The defendants, F. D. Wright and J. H. Reynolds, together with R. S. Lee, Julia Simon, joined by her husband, L. G. Simon, Edward A. Lee, Quincey Lee, Ada Ochler, joined by her husband, Harold Ochler, Mrs. Cassie Owen, a feme sole, S. E. Hittson, Lee Owens, Guy Dabney, J. A. Lauderdale, J. D. Ward, and Eula Dabney, designating themselves as "Interveners," filed a pleading on November 14, 1938, by F. D. Wright, as attorney for all said parties, complaining of plaintiffs and also of William F. Keough and wife Alma Keough and Thomas B. Jones. The prayer of said pleading was that an auditor be appointed and a master in chancery to have a full and fair accounting of all the affairs as between the partners, with further prayer for general relief, etc.

On February 17, 1940, J. H. Reynolds filed a cross-action against the plaintiffs and William F. Keough and wife Alma Keough and Thomas B. Jones. The only relief sought was upon an alternative to that sought by other pleadings. The alternative was stated thus: " * * * if upon a hearing of the main cause it should be determined by the court that the trust agreements are void or non-operative for any reason", etc. Upon such contingency said J. H. Reynolds, by said cross-action, sought judgment against the plaintiffs upon the $12,-000 note and the $983.10 note and against William F. Keough upon his $4,000 note (credited with payment of $2,416.67 on 2/25/35) and against Mrs. Alma Keough and Thomas B. Jones, as heirs of Mrs. B. F. Jones, deceased, upon the $4,000 stockholders' note of Mrs. B. F. Jones, since deceased.

Subject to said cross-action of J. H. Reynolds, the original defendants J. H. Reynolds and F. D. Wright, individually and as trustee, filed, on July 15, 1940, a pleading entitled "First Amended Original Answer and Cross-action of Defendants", reciting that it was "in lieu of the answer and cross-action filed herein November 14, 1938 asking for an accounting." (It is assumed, although not certain, that the superseded pleading thus referred to was the said Plea of Intervention above mentioned.) An auditor was appointed who made a report, to which plaintiffs filed objections, but all such objections were overruled and the report admitted in evidence.

The court instructed the jury to fix as an amount due by the plaintiffs to the defendant J. H. Reynolds the sum of $5,897.-67, being 12 per cent of the net amount that Mr. Reynolds paid in the liquidation of the Cisco Banking Company; and, further, to return a verdict for the plaintiffs on the note for $983.10 dated December 5, 1933, executed by P. C. O'Loughlin. The instruction recited that it was the opinion of the court that said note was barred by limitation. Relative to said P. C. O'Loughlin $12,000 note, two issues were submitted to the jury: The first, as to whether said note was executed "by Mr. O'Loughlin for the sole and only purpose of putting it up as collateral to the Reconstruction Finance Corporation in order to obtain a loan", which was answered "Yes"; and second, whether, if so, "J. H. Reynolds knew at the time he purchased the assets of the Cisco Mortgage Company that Mr. O'Loughlin executed said note for such purpose", which was also answered "Yes." Upon such verdict the court gave judgment declaring a lien on the land in favor of J. H. Reynolds in said sum of $5,897.67, with six per cent interest, declaring a foreclosure thereof, and ordering sale; perpetually enjoining F. D. Wright, individually, and as trustee, and J. H. Reynolds from selling said land and decreeing cancellation of the trust agreement. It was recited that W. F. Keough and Alma Keough and Thomas B. Jones "have been dismissed from said suit" and "it is, therefore, ordered, adjudged and decreed that the Interveners [naming them] * * * herein take nothing against the Plaintiffs herein or against W. F. Keough, Alma Keough or Thomas B. Jones." It was further provided that Wright, individually, and as trustee and J. H. Reynolds take nothing against W. F. Keough, Alma Keough and Thomas B. Jones. It was further specially provided that J. H. Reynolds take nothing against plaintiffs on his cross-action as to the $12,000 note, and that said note be canceled. It was further specially provided that J. H. Reynolds take nothing against the plaintiffs on his cross-action as to the $983.10 note.

The defendants F. D. Wright, individually and as trustee, and J. H. Reynolds have appealed. We shall continue to refer to the parties as plaintiffs and defendants, or by name.

It is deemed advisable, first, to discuss plaintiffs' cross-assignments of error. It is contended, in effect, that the court erred in awarding J. H. Reynolds recovery of $5,897.67 as a lien against the land because such liability, if any, was discharged by the judgment of the bankruptcy court authorizing the sale of assets to said Reynolds. It is, in effect, argued that a part of Reynolds' proposition to purchase the assets, which was accepted and authorized by said order of the bankruptcy court, was to pay for same in part by the cancellation of the balance due by the Loan Company to him and that such balance included the $5,897.67. It seems to us too clear to require discussion that the indebtedness thus referred to was the balance of the original Reconstruction Finance Corporation loan taken over by Reynolds, and for which a renewal note had been executed by the Mortgage Company payable to Reynolds for the amount of such balance, to-wit, the sum of $128,405.82.

■ J. H. Reynolds' proposition to purchase the assets for the consideration, in part, of the cancellation of the balance of such debt was sufficiently certain as to the indebtedness to be canceled that the proposition could afford no basis for any estoppel of Reynolds to deny that it included the $5,897.67.

■ The contention is wholly untenable, we think, that the $26,000 note (principal) paid by J. H. Reynolds to the Loan Company, which had been transferred to the latter by the payee Bank, can be considered a part of the indebtedness canceled by the sale and transfer of the assets to Reynolds. As between Reynolds, who paid his note, and the Mortgage Loan Company, who received payment, the note, when paid, ceased to represent any indebtedness. Clearly, we think, it would not affect the trust agreement or Reynolds' right thereunder to enforce contribution from O'Loughlin and the other parties to the trust agreement.

It is contended that the cross-action of J. H. Reynolds (one of the two filed by him) was subject to general demurrer. Should that be granted, it would not follow, we think, necessarily that the judgment was for that reason invalid. However, the cross-action was not subject to a general demurrer; at least, as to defendant W. F. Keough, the maker of one of the $4,000 notes therein involved. But even as between J. H. Reynolds and the other cross-

defendants, the essential issues, it is believed, were sufficiently presented by other pleadings in the case.

■ We are also of the opinion no error is shown in the action of the court in overruling the objection to the auditor's report to the effect that it improperly included an audit of the Loan Company, a corporation. It was conclusively shown, we think, that the corporation was created as a mere incident to, and part of the means of liquidating the bank. Its records were just as material to the subject matter of the suit as the records of the bank before the corporation was chartered. Plaintiffs, by filing their trial amendment, in effect joined the defendants and interveners in asking for an accounting, to which the audit and report thereof were proper, if not indispensable.

■ Plaintiffs' First Amended Original Petition (trial pleading) was, we think, subject to a general demurrer, as contended by the defendants, on the ground that it presented a suit by the heirs of P. C. O'Loughlin, deceased, filed within the four year period allowed by law for an administration, but contained no allegation that there was no administration pending and none necessary. Youngs v. Youngs, Tex.Com.App., 26 S.W.2d 191; Richardson v. Vaughan, 86 Tex. 93, 23 S.W. 640; Laas v. Seidel, 95 Tex. 442, 67 S.W. 1015.

However, the defendants and interveners, including all the parties to the trust agreement (or their representatives) except W. F. Keough, Mrs. Alma Keough and Thomas B. Jones, who were dismissed from the suit, sought, by other and independent pleadings, an accounting in which plaintiffs, by their trial amendment, as already said, finally joined. We think independently of the defects in some of the pleadings, the jurisdiction of the court was invoked by all parties, now before this court, to adjudicate the rights of the parties based upon the true state of the accounts and equities between them.

■ We cannot agree with defendants, however, in their contention to the effect that the court could properly exercise such jurisdiction to the extent of only declaring the rights of the parties under the trust agreement and then leave the trust, in effect, with the trustee empowered to proceed in the execution thereof. A judgment so providing, it seems to us, would be a mere declaratory judgment for which we know no authority, as we recently had occasion to

say in Fine v. Pratt, 150 S.W.2d 308. Hence, we reach the conclusion that it becomes necessary for us to determine the validity of the judgment as challenged by the parties, not upon the consideration that it in effect puts an end to the trust, and upon a stated condition declared plaintiffs' title cleared from the trust; but rather by the test of whether the judgment imposed the proper conditions upon plaintiffs' right to have their title decreed free from the trust.

The trust agreement clearly evidences the intention of the parties thereto that to whatever extent it became necessary for recourse to be had to the personal liability of the partners to satisfy the claims of depositors and creditors of the bank, each partner was to pay only in the proportion which the amount of stock owned by him bore to the entire capital stock of $100,000. The obligation of each partner to pay his proportionate share was to be enforced, as far as possible, by sales of the trust properties. It was implied, we think, that partners owing personal debts to the bank would pay such debts, as also that partners to whom the bank owed debts should be paid. It was the right, and to the interest, of each partner that the full resources of the Bank be made available, and be applied upon the claims of depositors and creditors. This required partners who owed the Bank to pay their debts. It required partners who had deposits to forego payment of same insofar as other depositors and creditors were concerned. The result was the same as if the partner—a depositor—made a contribution of the amount of his deposit to the satisfaction of the claims of the other depositors and creditors. A partner's contribution of his deposit was properly chargeable to the partner's personal liability. In an accounting between the partners giving effect to the trust agreement, it should be considered that J. H. Reynolds who had a deposit of $22,644.80 contributed that amount to the payment of partnership debts, and with that sum, upon an accounting he should be credited. P. C. O'Loughlin who had no deposit, of course, contributed nothing as a deposit. He owed the bank a note for $983.10 (less certain credits). Had he paid it, that would not have constituted a contribution by him to the payment of the debts of the partnership in the sense that a deposit would. O'Loughlin in paying his note would not be discharging a liability of the partnership but a personal liability. Yet, his failure to pay the note had its effect upon the partnership and upon the purpose of the trust agreement. The assets of the bank available and effective to pay depositors and creditors were by such failure to pay the note of $983.10 (disregarding interest and credits) that much less than they would have been. As regards the common purpose and interest of all the partners to have the claims of depositors and creditors satisfied as far as possible out of the assets of the Bank, without recourse to the individual liability of the partner as such, the result of O'Loughlin's failure to pay his note was, in terms of contribution to the common purpose, the same as a contribution of minus $983.10.

To supplement the assets of the Bank and as incident to, and in furtherance of, a plan of liquidation which was a modification of the original plan, Reynolds executed his note to the Bank for $26,000 and O'Loughlin his note for $12,000. Reynolds paid his note of $26,000 with $502.50 additional as interest, all of which was used to pay depositors and creditors of the Bank. O'Loughlin failed to pay his note of $12,000, or any part thereof, or any interest thereon, and hence so much was lost to the fund available to pay depositors and creditors of the Bank. In terms of contribution to the common purpose evidenced by the trust agreement, upon this item, O'Loughlin's contribution was at least minus $12,000. In addition to the foregoing items, except the $26,502.50, Reynolds made other contributions to pay depositors and creditors in the net aggregate of $49,147.30.

Such were the conditions existing when plaintiffs filed this suit seeking, in effect, to clear title to the land conveyed by P. C. O'Loughlin to F. D. Wright, as trustee, in pursuance of said trust agreement. It was shown that the depositors and creditors of the Bank had been paid or satisfied. One of the two purposes of the trust had, therefore, been accomplished. It was alleged by Reynolds—and since he is the one to complain, if any, it may be taken as established—that the other purpose of the trust had been accomplished, except as between J. H. Reynolds and P. C. O'Loughlin, the latter now represented by plaintiffs. If full effect be given to the trust agreement, upon what conditions, if any, are plaintiffs, as heirs of P. C. O'Loughlin, entitled to have the land freed from the equities in favor of Reynolds imposed by the trust agreement? In the final analysis,

that is believed to be the main question to be determined.

■ The action is a suit in equity. It is not a suit in trespass to try title. The plaintiffs stand in the shoes of P. C. O'Loughlin. To have proper standing in a court of equity, they must offer to do equity and submit to proper decree of the court as to what constitutes the doing of equity. Legal title to the land is in F. D. Wright. Plaintiffs' title therefore, if any, is equitable, and their burden was to show that such equitable title was superior to the legal title. The trust agreement itself provided, in effect, that the legal title would be superior except only when the purposes of the trust had been accomplished. Then only, it provided that it was the duty of the Trustee to reconvey the land. The judgment, whether right or wrong, does show that all purposes of the trust had not been accomplished. The court decreed, in effect, that the demand of equity was satisfied by requiring plaintiffs to pay 12 per cent of $49,147.30. But, it seems to us that something more than, and a little different from, that was required. In our opinion, in addition to that and requiring some modification of the requirement which was made, equity required payment of the amounts due on said notes of $983.10 and of $12,000.

■ As to said first note, the judgment has the effect of permitting plaintiffs to excuse themselves from doing equity by showing that the note if sued upon in an action at law would be subject to the bar of limitation. No pleading shows that plaintiffs are liable for payment of either the $983.10 note, or the $12,000 note in a suit upon same as such. Although the cross-action of J. H. Reynolds, as an alternative, sought to present such question, it is not really involved. Rather, the question is: Whether plaintiffs are to have title to the land cleared in them, except upon condition that they pay the amount represented by said notes. In our opinion, the obligation to do equity in a case where the doing of equity is a prerequisite to obtaining equitable relief is neither discharged, nor excused, by showing that an unpaid just debt is barred by limitation.

■ The jury, in effect, found that the $12,000 note was given for the sole purpose of being put up as collateral security for the R. F. C. loan, and that Reynolds knew that fact when he purchased the assets of the Bank. We think if the evidence raised any such issues they were immaterial. Conceding that at the stockholders meeting when it was determined to execute said notes, and they were executed, one of the stockholders referred to the purpose as being to put up such notes as collateral security, that was a merely inaccurate statement of the purpose fully understood by all. Such misnomer of the purpose could not change the facts. The several notes were promises to the Bank. They were treated as assets of the Bank and transferred to the Loan Company as assets of the Bank. Under the law the notes imported consideration. Besides that, the facts affirmatively showed consideration. The undisputed evidence showed a consideration for each of the notes consisting of the execution of the other notes, to accomplish, in part, the common purpose to liquidate the assets of the Bank, pay depositors and creditors, with no more recourse than necessary to the individual liability of the partners.

Had O'Loughlin paid the $12,000 note, as Reynolds paid his $26,000 note, there would, as to such items, have been nothing to adjust between them, except as to the excess $13,000 included in the Reynolds note. Had Reynolds been required to make his note in the amount of his stock the same as O'Loughlin, and all the other partners, then the payment by each of his note would involve no excess contribution by anyone in such payments. Therefore, we think the item allowed by the court was erroneous in calculating the 12 per cent upon $26,000 rather than upon the basis of $13,000; provided, of course, the $12,000 O'Loughlin note be required to be paid, as we think it should.

■ We are unable to satisfy ourselves that the contributions of the partners should draw interest. There is in a sense involved an accounting and settlement between partners which is only made by the judgment. Interest should be charged, we think, only after the accounts are stated by the judgment.

It is, therefore, our conclusion that the judgment of the court below should be reformed to require, as a condition to awarding Plaintiffs the title to the land, freed from the trust agreement, the payment of the balances due upon said notes of $983.10 and $12,000, together with one-twelfth of said sum of $49,147.30, after deducting $13,000 from the principal of the $26,000 note included therein. As so reformed, the judgment should be affirmed. It is accordingly so ordered.